## JOHN USENER v. THE STATE.

1. CONSTRUCTION OF STATUTES — CONSTITUTIONALITY. — Courts, in passing
upon the constitutionality of a law passed by both branches of the Legis-
lature, properly signed by the presiding officer of each, approved by the
governor, and promulgated as the law of the land in compliance with all
other constitutional requirements, are not required to go behind the en-
rolled bill deposited as a record in the office of the secretary of state,
and consult the journals of the Legislature with reference to the antece-
dent proceedings in the enactment of the law, in order to determine
whether or not it was passed in conformity with sect. 32 of art. 3 of the
Constitution of 1876.

2. THE SUNDAY-LAW. — Art. 186 of the Penal Code held to be constitutional.

APPEAL from the Criminal District Court of Harris.
Tried below before the Hon. G. COOK.

The appellant, who was a bar-keeper, was charged by
indictment with a violation of art. 186 of the Revised
Penal Code. He filed a motion to quash the indictment, on
the ground that the law under which he was indicted was
not passed by the Legislature in conformity with the
provisions of sect. 32, art. 3, of the Constitution of 1876.

His motion was overruled, and on a trial upon the merits

he'was convicted, and his punishment assessed at a fine of $20 and costs; from which judgment of conviction he prosecuted this appeal.

J. R. Burns, for the appellant, filed an able and elaborate brief, in which he contended that it appeared from the journals of the Legislature of 1879 that the act of the Legislature of February 21, 1879, adopting the Penal Code, of which art. 186 is one of the provisions, was not passed by the Legislature in compliance with sect. 32 of art. 3 of the Constitution of 1876, which requires bills to be read on three several days in each house, etc.

Thomas Ball, Assistant Attorney-General, for the State.

White, P. J.   We have presented for adjudication in this case the sole question of the constitutionality of "the Sunday-law," and specially, as involving the merits of this case, that portion of it found in art. 186 of the Penal Code, which declares that "any merchant, grocer, or dealer in wares or merchandise, or trader in any lawful business whatsoever, who shall barter or sell on Sunday, shall be fined not less than twenty nor more than fifty dollars; provided, this article shall not apply to markets or dealers in provisions as to sales made by them before nine o'clock A. M."

A number of objections are urged to the constitutionality of this law, which, if good, are not only fatal to it, but, as boldly, manfully insisted and argued by counsel, apply with equal force to the entire Penal Code and Code of Criminal Procedure as adopted by our last Legislature (the 16th) on the 21st of February, 1879.   These Codes were passed and adopted as one act, and the objections go to the mode and manner of their adoption.

It is urged that in their passage the Legislature ignored sect. 32 of art. 3 of the Constitution, wherein it is declared "that no bill shall have the force of a law until it

has been read on three several days in each house, and free discussion allowed thereon; but in cases of imperative public necessity (which necessity shall be stated in a preamble or in the body of the bill), four-fifths of the house in which the bill may be pending may suspend this rule, the yeas and nays being taken on the question of suspension and entered upon the journals."

In a nutshell, the argument is that this provision is mandatory, and that the journals of the houses must affirmatively show, in case of a suspension of the rules, that four-fifths of the members voted therefor, and that the yeas and nays were taken and in fact entered upon the journal; and in case they fail to do so, any enactment passed under the suspension is *ipso facto* unconstitutional and void. In other words, that the journals of the Legislature are the best evidence and standard by which the constitutionality of its proceedings are to be tested and measured; and that no act, however formal in all other respects, can or should be permitted to stand the test unless the recitals of the journals in every particular show a literal compliance with the constitutional provision. We do not propose to follow the argument of the learned counsel, or to review the many cases (most of which have been read) cited by him in the able and exhaustive brief he has submitted for our consideration. We shall content ourselves by setting out the act of the Legislature which is complained of, and cite, in support of the proposition that the courts are not required to consult the journals of the legislative houses in determining the constitutionality of a law, such authorities as best commend themselves to our judgment both in soundness of reason and conclusiveness of argument.

The act complained of is as follows: —

"An act to adopt and establish a Penal Code and a Code of Criminal Procedure for the State of Texas.

" Section 1. *Be it enacted by the Legislature of the State of Texas*, That the following articles shall hereafter constitute the Penal Code of the State of Texas.

" *Whereas*, The fact that the session of the Legislature is restricted to a short period by the Constitution, and the fact that there is a large amount of necessary legislation demanding attention, constitute an imperative public necessity which justifies the suspension of the constitutional rule requiring this bill to be read on three several days, therefore the said rule is hereby suspended.

" *Whereas*, The Penal Code and Code of Criminal Procedure of the State of Texas has been printed and laid upon the desks of members at the commencement of this session, which has afforded them ample time to read the same ; and

" *Whereas*, It is impossible to read the same through on three several days as contemplated by the Constitution ; therefore,

" *Resolved*, An imperative public necessity exists that the constitutional rule requiring bills to be read three several days be suspended as to the reading, but the same shall be considered on three several days."

Notwithstanding it is admitted that this bill was passed, was signed by the presiding officer of each house in the presence of the house over which he presided, was presented to the governor, and became a law according to all other constitutional rules, and has been published and promulgated as part of the law of the State, and notwithstanding it comes to us fully accredited as a valid subsisting law upon our statute-book, we are asked to wade through the *disjecta membra* of the antecedent proceedings with reference to it as they may be found in the journals, and if, upon inspection, we should find any omission of a literal compliance with the above provision of the Constitution, to seize upon and hold it as the best evidence of its invalidity, and conclusive of its unconstitutionality.

Mr. Cooley says (and this great author has been earnestly invoked by the learned counsel) : " For the same reason, it is required by the constitutions of several of the States that no bill shall have the force of law until on three several

days it be read in each house, and free discussion allowed thereon, unless in case of urgency four-fifths or some other specified majority of the house shall deem it expedient to dispense with this rule. The journals which each house keeps of its proceedings ought to show whether this rule is complied with or not; but in case they do not, the passage in the manner provided by the Constitution must be presumed, in accordance with the general rule which presumes the proper discharge of official duty." Cooley's Const. Lim. (3d ed.) 139.

We have found, in our investigations of the question, no discussion of it more satisfactory, or more in accordance with our own individual views, than the able and overwhelming arguments contained in the opinions of the Supreme Court of New Jersey in *Pangborn* v. *Young*, and of the Supreme Court of Nevada in the case of *The State* v. *Swift*. In the latter case, all the authorities *pro* and *con* are collated and most carefully elaborated and reviewed, and the result arrived at, as stated in the syllabus of the case, is: "Where an act has been passed by the Legislature, signed by the proper officers of each house, approved by the governor, and filed in the office of the secretary of state, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. Neither the journals kept by the Legislature nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the Legislature, properly enrolled, authenticated, and deposited with the secretary of state, did not become a law. This court, for the purpose of informing itself of the existence or terms of a law, cannot look beyond the enrolled act, certified to by those officers who are charged by the Constitution with the duty of certifying and with the duty of deciding what laws have been enacted." *The State* v. *Swift*, 10 Nev. 176; *Pangborn* v. *Young*, 32 N. J. L. 29; *Sherman* v. *Story*, 30 Cal. 253.

In principle, the same doctrine has twice been declared by our Supreme Court. In *Central Railroad Company* v. *Hearne*, 32 Texas, 546, it was held that the best evidence of the terms of an act of the Legislature is a copy of the enrolled bill. And in *Blessing* v. *City of Galveston*, our present chief justice says : " We are constrained to say, however, that we cannot agree that either on principles of sound reason or the weight of authority can it be maintained that the judicial department, on the bare fact that the journals of one or both houses of the Legislature fail to show the passage of the bill in full and strict conformity to all the directions contained in the Constitution, should disregard and treat as naught an act in all other respects perfect and unobjectionable, as was in effect said by the Superior Court of Ohio (*Miller* v. *The State*, 3 Ohio St. 483)."   42 Texas, 641.

Our conclusion of the matter is, that, under the weight of authority, we are not required to look to the journals to find out if a law has been passed in accordance with the constitutional requirements ; that, the journals not being referred to, the act to adopt the Codes above quoted is constitutional, and with it, and as a part of it, the Sunday-law. Penal Code, art. 186.

We will state, however, for the information and satisfaction of learned counsel, that without feeling in duty bound to do so in the adjudication of this case, we yet have nevertheless, as matter of curiosity and for our own personal gratification, examined the journals of the two houses, both with regard to the original bill, entitled "An act to adopt and establish a Penal Code and a Code of Criminal Procedure for the State of Texas," and the amendment to art. 186, " the Sunday law," specially attacked in this case, and the result of our examination is that the two acts have received the legislative sanction in strict conformity with the constitutional requirements, and if driven to the journals for authority to declare these acts constitutional, we

do not hesitate to say we are of opinion we would find no difficulty in the way of establishing the fact by them in every essential particular.

The judgment of the court below is in all things affirmed. *Affirmed*.